[No. 1217.   February 4. 1911.]

GALLUP ELECTRIC LIGHT COMPANY, Appellee v. PACIFIC IMPROVEMENT COMPANY, ET AL, Appellants.

### SYLLABUS (BY THE COURT).

1.  A contract, which is the mere accompaniment of the sale of property, and entered into for the purpose of enhancing the price at which the vendor sells it, and which is collateral to the sale, and where the main purpose of the contract is the sale of the property, does not come within the inhibition of the Act of Congress of July 2, 1890, even though the contract restrains trade to some extent.

2.  A contract not to engage in business is a personal contract, and can only bind the parties to it.

3.  Under a contract not to engage in business in competition with the purchaser of property, the party bound is not precluded from loaning money to others, even though they may use it to embark in business in competition with the purchaser.

4.  Parties not signing the contract can not be enjoined from engaging in their own behalf in business in connection with party bound, in competititon with purchaser or his assignee.

5.  Where evidence is taken by an examiner, who does not report findings of fact to the court, the same will be reviewed on appeal.

6.  It is error to enter judgment for damages against parties not bound by the contract, even though the parties may have aided and abetted the contracting party in violating the contract.

Appeal from the District Court for McKinley County, against IRA A. ABBOTT, Associate Justice.   Reversed and remanded.

E. W. DOBSON and F. W. CLANCY for Appellants.

Light Co. v. Imp. Co., 16 N. M. 86.

A contract not to engage in business is a personal contract and can only bind the parties to it. Kramer v. Old, 56 Am. St. Rep. 650, 119 N. C. 11; Jones v. Havens, L. R. 4 Ch. Div. 636; Reeves v. Sprague, 114 N. C. 647; Fleckenstein Bros. v. Fleckenstein, 57 At. 1025; Bird v. Lake, 1 H. & M. Ill.; Lumley v. Gye, 2 El. & Bl. 216; Emmert v. Richardson, 24 Pac. 480, 44 Kas. 268.

The person who has agreed not to engage in a similar business, must, in order to be held guilty of a violation of his agreement, so re-engage in said business as to receive a profit and a benefit to himself personally. Haley Grocery Co. v. Haley, 35 Pac. 595; Fleckenstein v. Fleckenstein, 57 Atl. 1025, 66 N. J. Eq. 255; 2 High on Injunctions, sec. 1176; Nelson v. Johnson, 36 N. W. 868, 38 Minn. 255; Bird v. Lake, 1 Hem. & M. 338, 71 Eng. Rep. 147; Harkinson's Appeal, 21 Am. Rep. 9, 78 Pa. St. 196.

The court has no jurisdiction at the suit of private parties to deprive a corporation of its right to use a franchise granted by a municipality. Clark v. Inter. Tel. Co., 101 N. W. 997; People v. City of Chicago, 77 N. E. 245; Bronson v. Albion Tel. Co., 93 N. W. 201; Stedman v. City of Berlin, 73 N. W. 57; Old Colony Trust Co. v. Wichita, 123 Fed. 762.

The contract on which this suit is founded is one in restraint of trade. Chitty on Contracts 736, 10 Am. ed.; 24 A. & E. Enc. Law 842; 9 Cyc. 523.

The contract is void under Act July 2, 1890, sec. 3. 26 Stat. at Large 209, 3 U. S. Comp. Stat. 3201; 7 Fed. Stat. Ann. 344; P. & R. R. Co. v. Pennsylvania, 82 U. S. 15 Wall. 232; W. U. Telegraph Co. v. Texas, 105 U. S. 460; U. S. v. Trans-Missouri Assoc., 166 U. S. 312; U. S. v. Joint Traffic Assoc., 171 U. S. 558; Northern Securities Co. v. U. S., 193 U. S. 331; Loewe v. Lawlor Adv. Sheets, U. S. S. C., Oct. Term, 1907, 304

THOMAS K D. MADDISON, REID & HERVEY, FERGUSON & CREW and W. B. CHILDERS for Appellee.

The court's findings are conclusive upon all the issues

tried. Gale v. Salas, 11 N. M. 211; Torlina v. Trorlicht, 5 N. M. 148; 6. N. M. 54; Newcomb v. White, 5 N. M. 435; Perea v. Barela, 6 N. M 239; Lynch v. Grayson, 5 N. M. 26; Romero v. Coleman, 11 N. M. 537; Rush v. Fletcher, 11 N. M. 557.

The organization of the Pacific Improvement Company was brought about by Page in an attempt to evade and dodge his contract. Harris v. Theus, 43 So. 131, Ala.; Fleckenstein v. Fleckenstein, 57 Atl. 1025; 16 A. & E. Enc. of Law 1109; Stone v. Goss, 55 Atl. 736; 2 High on Injunctions, 4 ed. 1107, sec. 1122; Emmert v. Richardson, 24 Pac. 480; Guerant v. Dandelet, 32 Md. 561; Thompson v. Andrus, 41 N. W. Rep. 683; Upriver Ice Co. v. Denler, 72 N. W. 157; Moore & Hanley Hardware Co. v. Towers Hardware Co., 87 Ala. 206, 13 Am. St. Rep. 23, 6 So. 41; Booth & Co. v. Seibold, 74 N. Y. Sup. 776; Beal v. Chase, 31 Mich. 490.

Violation of contract not to engage in business directly or indirectly. 2 High on Injunctions, secs. 1171, 1176; Nelson v. Johnson, 36 N. W. 868; Oregon Coal Co. v. Windsor, 20 Wall., U. S. 64; in re Greene, 52 Fed. 104; U. S. v. Joint Traffic Assoc., 171 U. S. 505; Dueber Watch Case Mfg. Co. v. Howard Watch Co., 66 Fed. 645; Booth v. Seibold, 74 N. Y. Supp. 777; Haley v. Haley, 25 Pac. 595; Fleckenstein v. Fleckenstein, 57 Atl. 1025; Harkinson's Appeal, 21 Am. Rep. 9; Beal v. Chase, 31 Mich. 490.

Evidence supports the findings. Quock Ting v. U. S., 140 U. S. 420; Kavanaugh v. Wilson, 70 N. Y. 177; Koehler v. Adler, 78 N. Y. 287; Wait v. McNeil, 7 Mass. 261; Rea v. Missouri, 17 Wall. 543; Castle v. Bullard, 23 How. 172; Kempner v. Churchill, 8 Wall. 369; Burch v. Smith, 15 Tex. 219; 4 Wigmore on Evidence, 3547, sec. 2498.

Relief for misrepresentations made by promoters of a proposed corporation. 2 Cooley on Torts 494.

Contract was not in restraint of trade. U. S. v. Trans-Missouri Association, 166 U. S. 293; U. S. v. Joint Traffic Assoc., 171 U. S. 567; Hopkins v. U. S., 171 U. S. 578; Northern Securities Co. Case, 193 U. S.

331; Field v. Barber Asphalt C., 194 U. S. 623; Booth v.
Davis, 127 Fed. 875, 131 Fed. 31; Whitwell v. Continen-
tal Tobacco Co., 125 Fed. 455; Phillips v. Iola Portland
Cement Co., 125 Fed. 594; Hopkins v. U. S., 171 U. S.
578; Chesapeake etc. Fuel Co. v. U. S., C. C. A., 155 Fed.
610; Robinson v. Suburban Brick Co., 127 Fed. 806; U.
S. v. American Tobacco Co., 164 Fed. 701; Cavin v.
Thomas, 15 N. M. 660.

### STATEMENT OF FACTS.

This action was begun in the District Court of Mc-
Kinley County, in the Second Judicial District, by the
appellee, who was plaintiff in the lower court, to restrain
and enjoin the defendant company and its stockholders
from carrying on the business of generating, selling and
distributing electricity for light and power purposes, and
from furnishing electrical supplies and doing other work
in connection with said business, and for damages alleged
to have been sustained by appellee on account of appellants
having engaged in such business. Appellee bases its cause
of action upon a written contract, made and executed on
the 18th day of October, 1905, between Gregory Page,
one of the defendants, and E. C. Allen, which contract was
thereafter assigned by said Allen to the Appellee. At the
time of the execution of the contract, Page was the owner
of all the capital stock of the appellee company, and sold
said stock to said Allen and stipulated in said contract,
among other things, as follows: "Said party of the first
part (Gregory Page) further covenants and agrees that
he will not engage in the business of generating electricity
for light, power or other purposes, or in furnishing light,
or in any way engage in business in competition with the
business of said electric light company, in the town of
Gallup, or its immediate vicinity." The complaint al-
leged that the defendant, Page, caused the Pacific Improve-
ment Company, hereafter called the Pacific Company, to
be organized for the purpose of generating electricity for
light and power purposes; that Page furnished practically
all the money which was invested in the business of said
Pacific Company. That said Page controlled, operated,

managed and directed said company, and that the incorporators and subscribers to its capital stock were mere figureheads and had no subtantial interest therein, and permitted the use of their names for the purpose of enabling Page to fraudulently evade and violate the provisions of the contract above quoted, and that the defendant company is engaged in the generation of electricity in violation of said contract. That the defendant company had secured a franchise from the town of Gallup, authorizing it to use its business of furnishing electricity for light and power purposes, and that said company would not have been organized, except for the wrongful acts of Page. Damages were alleged and an accounting was asked for, as to the amount of lighting done by the Pacific Company, and an injunction was prayed against the defendant company and the individual defendants, restraining them from carrying on said business in violation of the terms of the contract made by Page, and for general relief. After the overruling of a demurrer, all of the defendants filed answers; defendant Page filing a separate answer, and the other defendants a joint answer, both answers being under oath. The Pacific Company and the defendants, other than Page, admitted that they were engaged in the generating of electricity, but denied that Page had contributed any money whatever to the said company, or that he owned any of its stock, or that he had anything to do with the management of the company and alleged that the incorporators of the company had contributed all of the money used in and about the business. Page, in his separate answer, denied that he had anything to do with the Pacific Company, or that he had contributed any money to enable it to begin or carry on its operations. The plaintiff filed no replies to either of the answers. The cause was referred, and a part of the proofs were taken by an examiner and a part by the court. The court signed a decree enjoining the Pacific Company, the incorporators thereof, and the defendant Page from operating the lighting plant, or from directly or indirectly engaging in the business of generating electricity in the town of Gallup, and it also enjoined the defendant com-

pany from assigning the franchise which it had obtained from the town of Gallup, authorizing it to use its streets, and also from selling its electric light plant, and rendered judgment against the Pacific Company, the stock holders thereof, Gus Mulholland, Joseph H. Coddington, J. A. Gordon, Palmer Ketner, and also against Gregory Page, for the sum of $3250.00. Other restrictions were imposed upon all the defendants, which it will not be necessary to set out in detail. From its decree this appeal is taken by appellants.

## OPINION OF THE COURT.

ROBERTS, J.—There is some question as to whether this contract should not be held invalid, as being contrary to public policy, under the rule laid down in Charleston Gas Co. v. Kanawha Gas Co., 58 W. Va. 26, 50 S. E. 878, wherein the court says: "The supplying of illuminating gas is a business of a public nature, to meet a public necessity. It is not a business like that of an ordinary corporation, engaged in the manufacture of articles that may be furnished by individual effort. Hence, while it is justly urged that those public rules which say that a given contract is against public policy should not be arbitrarily extended so as to interfere with the freedom of contract, yet in the instance of business of such a character that is presumably can not be restrained to any extent whatever, without prejudice to the public interest, courts decline to enforce or sustain contracts imposing such restraints, however partial, because in contravention of public policy." To the same effect, and supporting the doctrine, are People ex rel Peabody v. Gas Trust Company, 130 Ill. 268; Gibbs v. Baltimore Gas Company, 130 U. S. 396; Chicago Gas Light & Coke Company v. Peoples' Gas Light & Coke Company, 121 Ill. 530; Greenwood on Public Policy, p. 2.

Counsel for appellee insists that the principle laid down in the above cases has no application to the contract now before the court; that so long as the contract to refrain from doing business is not in violation of a public duty or of a previous contract, there is no distinction

on account of the character of the business refrained from. Counsel for appellants concurs in this view, and, by reason of this situation, we shall give no further consideration to this question, and are not to be understood as expressing any opinion thereon.

Appellants urge the invalidity of the contract under Section 3 of the Act of Congress of July 2, 1890. The section is as follows:    "Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any territory of the United States or of the District of Columbia, or in restraint of trade or commerce between any such territory or another, or between any such territory or territories and any state or states or the District of Columbia, or with foreign nations, or between the District of Columbia and any state or states or foreign nations, is hereby declared illegal." 26 Stat. at Large 209; U. S. Comp. Stat. 3201; 7 Fed. Stat. Ann. 344, and the cases of U. S. v. Trans-Missouri Association, 166 U. S. 327; U. S. v. Joint Traffic Association, 171 U. S. 558; and Northern Securities Co. v. U. S.; 193 U. S. 331, are cited as supporting this proposition. It is true, that in the case of U. S. v. Trans-Missouri Association, the court used language that might support the contention that all contracts come under the Act of Congress of July 2, 1890. This, however, is not the proper construction of the case, as is shown by the following quotation from the opinion delivered by Mr. Justice Peckham, in the case of U. S. v. Joint Traffic Association, 171 U. S. 558: "We are not aware that it has ever been claimed that a lease or purchase by a farmer, manufacturer, or merchant of an additional farm, manufactory, or shop, or the withdrawal from business of any farmer or merchant, restrains commerce or trade, within any legal definition of that term; and the sale of good will of a business, with an accompanying agreement not to engage in a similar business, was instanced in the Trans-Missouri case as a contract not within the meaning of the act, and it was said that such a contract was collateral to the main contract of sale, and was entered into for the purpose of enhancing the price at which the vendor sells his busi-

ness x x x x To suppose, as is assumed by counsel, that the effect of the decision in the Trans-Missouri case is to render illegal most business contracts, however indispensable and necessary they may be, because, as they assert, they will restrain trade in some remote and indirect degree is to make a violent assumption and one not called for or justified by the decision mentioned, or by any other decision of this court." It is very evident from the above quotation that such a contract as the one now under consideration does not come within the inhibition of the Act of July 2nd, 1890, and a careful reading of the opinion in the Northern Securities case, *supra,* discloses that the court held that the act only "embraces all direct restraint" imposed by any combination, etc. We do not believe there was any intention upon the part of Congress to include, within the prohibition of the act, a contract which is the mere accompaniment of the sale of property, and entered into for the purpose of enhancing the price at which the vendor sells it, and which is collateral to such sale, and where the main purpose of the contract is the sale of the property. See Thomas v. Gavin, decided by this court, and reported in 15 N. M. 660. Contracts which only incidentally or indirectly restrict competition, while their main object and purpose are to increase the trade and business of those who make them, are not in restraint of trade. Whitwell v. Continental Tobacco Co., 125 Fed. 455; Phillips v. Portland Cement Co., 125 Fed. 594; Hopkins v. U. S., 171 U. S. 578.

While we must hold that the contract is not invalid by reason of the Act of Congress above set out, still this case must be reversed on account of other errors which are apparent in the record. Page was the only one of the defendants who signed the contract upon which this suit is based, and consequently was the only one bound thereby. The contract was a personal contract and could only bind the parties to it. Allen, having transferred the contract to the Gallup Electric Light Company, that company had all the rights under the contract which Allen had, as against Page. We cannot read into the contract which Page signed, conditions which are not in it,

so as to make it more stringent than it otherwise would be. There is nothing in the contract which forbids Page from loaning money to individuals, or corporations who desire to embark in the business of manufacturing electricity for sale in the town of Gallup. The loaning of money to other people to invest in an electric light plant, by Page, if he did loan it, is not "engaging in business" in competition with the business of said electric light company in the town of Gallup.

The court below not only enjoined the defendant Page from engaging in the electric light business, but enjoined the defendants, Gus Mulholland, Joseph H. Coddington, J. A. Gordon, Palmer Ketner and the Pacific Improvement Company, and gave judgment against them for damages. Appellee cites the case of Thompson v. Andrus, 41 N. W. 683, to support the judgment in this case against the parties not signing the contract, but the facts in that case are very different from the facts shown in the present case. The court says: "It is, however, apparent from the testimony that there was a complete understanding between the defendants to pursue the plan adopted for the very purpose of avoiding the binding force of the contracts with complainant." We have carefully examined the record in this case, and have not been able to find any evidence which shows that the defendants, other than Page, had any knowledge of the contract entered into between Page and Allen. Appellee claims, correctly, that the court's findings of fact upon matters within the issues, where there is any evidence to support them, are conclusive. There is no doubt that this rule is correct, where the court has the witnesses before it and is able to observe the appearance of the witnesses while upon the stand, and their manner of testifying. But in this case a large portion of the evidence was taken by an examiner, who reported the same to the court without making any findings of fact or conclusions of law; consequently the trial court did not have the benefit of hearing all of the witnesses testify, or of noting their manner and conduct on the stand. The trial court stood, in regard to the evidence which it did not hear, in

just the position which we occupy on this appeal, and the decree entered into should not be affirmed unless it is sustained by substantial evidence which the court heard, unless the additional evidence taken by the examiner shows that the decree was properly made and sustains it by a preponderance of the testimony, and all the evidence should be considered by the court, on appeal, so as to determine whether or not the evidence sustains the judgment or decree.    Appellants, other than Page, all deny, by their sworn answer, knowledge of the contract between Page and Allen, and those who testify in the case again deny any knowledge.    They also deny that Page had any connection whatever with the organization of the Pacific Company.   Appellee has not, in our judgment, shown knowledge on the part of these defendants of the contract between Page and Allen, or such circumstances as would justify an inference of such knowledge; consequently they should not have been enjoined.    In the case of Kramer v. Old, 119 N. C. 11, the court held, where a sweeping injunction was issued, as in this case, that: "The judgment must be modified, so as to restrain only the three defendants who were parties to the original contract from engaging in, or from taking stock in or assisting in the organization of, a corporation formed with the purpose of carrying on the business of milling in the vicinity of Elizabeth City.    The order must be vacated as to the other defendants."    The Old case also holds that a party bound by such an agreement will not be restrained from selling or leasing his premises to others to engage in the business which he has agreed not to carry on, or from selling them the machinery or supplies needed in embarking in it. According to this doctrine Page had the right to lease to the Pacific Company a part of his building and the right to use his engines and boilers.    Another case which seems to have been well considered, and in which the facts, briefly stated, were: That one Edward Fleckenstein sold his business and good will and covenanted not to engage as agent or servant in the bologna business.    After making this agreement, he commenced the construction of a bologna factory and was enjoined from so doing, and then he leased

the factory to his wife and her brother, and plaintiff then sought to enjoin Mrs. Fleckenstein and her brother from carrying on the business of manufacturing bologna sausage. The court says: "The important question remains, what is the principle on which Rosena E. Fleckenstein and Nicholas Kerber, strangers to this contract, can be interfered with, in the prosecution of their lawful business, because of this contract which Edward Fleckenstein made? It would, I think, be a difficult proposition to maintain that persons not parties to such a contract as this are liable to an injunction in equity, at the suit of the covenantee restraining them from merely aiding or abetting the covenantee in the violation of this contract. If Edward Fleckenstein openly and honestly undertook to set up the bologna and provision business in Jersey City, in his own name, would the complainants be able to enjoin a third party from letting a bologna factory and shop to Edward Fleckenstein for the purpose of his business? One interesting feature of this situation is that an injunction goes against the convenantor to restrain him from committing a breach of the contract, while the third injunction, in the same suit, goes against a third party, a stranger to the contract, between whom and the complainant there is no privity, to restrain him from the commission of a tort, which tort consists in causing the covenantor to violate his contract." Fleckenstein v. Fleckenstein, 66 N. J. Eq. 255. The same rule is laid down in Emmert v. Richardson, 44 Kas. 268. Under the rule laid down in Fleckenstein v. Fleckenstein, *supra,* it would seem to make no difference whether the defendants, not parties to the contract, knew of the existence of the contract or not, but it is not necessary for us to go that far, as there is no evidence to show knowledge. Even if Page had loaned money to the Pacific Company, to be used in the purchase of an electric lighting plant, and had taken security upon the plant for the money loaned, he would not have violated his contract with Allen. 2 High on Injunction (2nd Ed.) Sec. 1176; Bird v. Lake, 1 Hen. & M. 338; Harkinson's Appeal, 78 Penn. St. 196. At the very most, the court should only have enjoined Page, and

should have ordered a sale of the stock which he owned, if the evidence showed that he owned any stock, in the Pacific Company, and should not have enjoined that company from competing with the Gallup Electric Light Company. We find no evidence in the record to sustain the finding of the court below that the Pacific Company was organized by Page through the other individual defendants in the case, although he may have loaned money to it or to some of its stock-holders, or that, in pursuance of a combination between Page and its individual stock-holders, for the purpose of evading the contract, the Pacific Company applied to the trustees of the town of Gallup and secured a franchise authorizing it to use the streets and alleys of the said town for the purposes of carrying on its business. We think the court was in error in perpetually enjoining the Pacific Company from engaging in the business of generating and furnishing electricity for light and power purposes in the town of Gallup, and from transferring and conveying to any person or corporation its right to generate and sell electricity under its franchise or permit from the town of Gallup, and from assigning its license and permit to any other person or corporation, to be used in conjunction with or in connection with the defendant Page. This is virtually reading into the contract that Page could not buy power to run his laundry or ice business from the Pacific Company, or from any other company or individual to whom it might sell.

We also think the trial court committed error in entering judgment for $3250.00 against all of the defendants. If judgment was to be entered at all, it should only have been against the defendant Page, as he is the only one of the defendants who signed the contract. Even though the court may have believed that the other defendants aided and assisted him in violating the agreement he had made, still, as they never covenanted not to go into the business of generating electricity in the town of Gallup, it was error to give any personal judgment against them. Even if the court was justified in giving a judgment against Page, we think the judgment would have been excessive. There was no showing as to what the

net profits of the Gallup Electric Light Company would have been on the business taken from it by the Pacific Company, nor what the net profit would have been on the wiring done by the Pacific Company. On account of the errors pointed out, this cause is, therefore, reversed and remanded to the District Court of McKinley County for further proceedings in accordance with this opinion. It is so ordered.

### SYLLABUS (BY THE COURT).

