This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38378**

**STEVE JUSTICE, Deceased,**

Worker-Appellee,

v.

**BLACK ROCK SERVICES and
ASSOCIATED BUILDERS &
CONTRACTORS, INC., MERIT
SHOP WC GROUP,**

Employer/Insurer-Appellants.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Anthony "Tony" Couture, Workers' Compensation Judge**

Dunn Law Offices
Rodney Dunn
Albuquerque, NM

for Appellee

Butt Thornton & Baehr PC
Carlos G. Martinez
Scott F. Stromberg
Felicia C. Boyd
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** Employer Black Rock Services and Insurer Associated Builders & Contractors, Inc., Merit Shop WC Group (collectively, Employer) appeal the workers' compensation judge's (WCJ) compensation order awarding death benefits to Worker Steve Justice's

son, Jacob, pursuant to NMSA 1978, Section 52-1-46(C)(1) (2013) of the Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2017). We find the arguments Employer raises on appeal either unreviewable or without merit, and we therefore affirm.

## DISCUSSION[1]

**{2}** Employer operates a mine where, at all relevant times, Worker was the plant operator and was permitted to live. Worker died at the mine after work hours when, on his way to turn off a generator, he became pinned between his truck and the generator trailer. After a trial, the WCJ determined Worker's accident was compensable under the Act and awarded Jacob death benefits. Employer challenges four decisions on which the award was based: (1) that Worker's accident arose out of and in the course of his employment; (2) that Worker did not willfully cause his death, and Worker's methamphetamine use did not bar recovery; (3) that Jacob is a dependent, entitled to benefits; and (4) that it was appropriate to rule on Worker's motion for attorney fees while this appeal was pending. We address each in turn.

### I. The WCJ's Determination That Worker's Accident Arose Out of and in the Course of Employment

**{3}** As relevant to our discussion here, the Act requires that, to be compensable, an accidental injury must arise out of and in the course of the worker's employment. *See* §§ 52-1-9(B), -28(A)(1); *see also Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2014-NMCA-019, ¶ 8, 317 P.3d 866 ("For an injury to arise out of employment, the injury must have been caused by a risk to which the injured person was subjected in his employment. . . . The term 'course of employment,' on the other hand, relates to the time, place, and circumstances under which the accident takes place." (internal quotation marks and citations omitted)). The WCJ made numerous findings of fact pertaining to these inquiries and ultimately concluded that "Worker was killed in an accident arising out of his employment and in the course and scope of his employment." With respect to these determinations, Employer first contends the WCJ erroneously relied on inadmissible hearsay and next challenges the WCJ's application of various doctrines.

### A. Hearsay

**{4}** Employer complains about the introduction of statements given to authorities by the night watchman, who was working the evening of Worker's death. Employer contends these statements were inadmissible hearsay and the WCJ erred in relying on them to determine that Worker's accident arose out of and in the course of his

---

[1]Because this is an unpublished, memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we omit a background section.

employment. We agree with Worker that these claims are unpreserved, and we therefore do not review them.[2]

**{5}** "To preserve a question for review it must appear that a ruling or decision by the tribunal was fairly invoked." *Trace v. Univ. of N.M. Hosp.*, 2015-NMCA-083, ¶ 11, 355 P.3d 103 (alterations, internal quotation marks, and citation omitted); *see also* Rule 12-321(A) NMRA. This standard is met when there is a "timely and specific objection" that apprises the tribunal of the nature of the claimed error so that it may make an "intelligent ruling" on the issue. *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791. To aid us in determining whether a ruling was fairly invoked, we require an appellant to include a statement in the brief in chief "explaining how the issue was preserved in the court below." Rule 12-318(A)(4) NMRA.

**{6}** Here, in relation to its hearsay claims, Employer offers no such statement or explanation, but rather a single citation to seventeen pages of the record. The first twelve pages make no mention of hearsay. The remaining five pages comprise a portion of Employer's proposed findings of fact and conclusions of law that were submitted after trial. Although hearsay is mentioned once, in the context of a proposed finding that the night watchman's "statements are hearsay," this is inadequate to have timely apprised the WCJ of the nature of the claimed error so that an intelligent ruling could have been made. *Cf. State v. Neswood*, 2002-NMCA-081, ¶ 18, 132 N.M. 505, 51 P.3d 1159 (holding that an objection was untimely when raised after the testimony was heard, such that the issue would not be considered on appeal); *Gutierrez v. Albertsons, Inc.*, 1991-NMCA-135, ¶¶ 39-40, 44, 113 N.M. 256, 824 P.2d 1058 (declining to review a hearsay challenge due to its lack of preservation by objection at trial). We, therefore, conclude that Employer's claims of hearsay regarding the night watchman's statements were not preserved, and we do not review them.

## B.     The WCJ's Application of Various Doctrines

**{7}** In concluding Worker's accident arose out of and in the course of his employment, the WCJ invoked the "bunkhouse" rule, as well as exceptions to the "going and coming rule" (i.e., the "special errand rule" and the "premises exception"). *See, e.g.*, *Lujan v. Payroll Express, Inc.*, 1992-NMCA-063, ¶ 13, 114 N.M. 257, 837 P.2d 451 (providing that under the "bunkhouse rule" "a worker may establish that an injury arose out of and occurred in the course of employment if, in view of the nature of the employment setting and accommodations available, it was contemplated (as distinguished from required) that claimant should utilize the employer's bunkhouse or other on-premises sleeping facilities" (internal quotation marks and citation omitted)); *Edens v. N.M. Health & Soc. Servs. Dep't*, 1976-NMSC-008, ¶ 5, 89 N.M. 60, 547 P.2d 65 (providing that "the longstanding 'going and coming' rule . . . precludes compensation for injuries sustained on the way to work and on the way home from work"); *id.* ¶ 12 (setting out the parameters of the "special errand rule" and recognizing it as an exception to the "going and coming rule"); *Dupper v. Liberty Mut. Ins. Co.*, 1987-

---

2We express no view on whether, as a general matter, the rules of evidence apply in hearings before the Workers' Compensation Administration.

NMSC-007, ¶¶ 2, 13, 105 N.M. 503, 734 P.2d 743 (adopting the "premises rule" as an exception to the "going and coming rule"). Employer disputes the applicability of these doctrines. For two reasons, we find Employer's arguments inadequate to warrant reversal. *See, e.g.*, *Villanueva v. Sunday Sch. Bd. of S. Baptist Convention*, 1995-NMCA-135, ¶ 26, 121 N.M. 98, 908 P.2d 791 ("[I]n order to obtain a reversal, an appellant must clearly point out error.").

**{8}**     First, to the extent Employer challenges the WCJ's findings of fact in relation to its claims here, such challenge is deficient. While Employer asserts that substantial evidence does not support the WCJ's findings, it does not do the work necessary to make a proper sufficiency challenge. Namely, Employer does not comply with our appellate rules by identifying the specific findings of fact it contends are not supported by substantial evidence. *See* Rule 12-318(A)(4). Employer also does not bring to our attention all of the evidence supporting the WCJ's findings; does not state the reasonable inferences that could be drawn from that evidence; and does not explain why all the pertinent evidence, on balance, fails to support the WCJ's findings. *See Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶¶ 5, 8-12, 115 N.M. 181, 848 P.2d 1108; *accord* Rule 12-318(A)(3). *See generally Martinez*, 1993-NMCA-020, ¶¶ 8-18 (outlining the two-step process involved in a sufficiency challenge and the reasons an appellant making such a challenge must engage in it, including that it might lead the appellant to decide the issue is not worth pursuing). Instead, by and large, Employer explains why the evidence supports its desired findings. This, however, is not relevant to the inquiry on appeal. *See Gutierrez v. Amity Leather Prods. Co.*, 1988-NMCA-006, ¶ 7, 107 N.M. 26, 751 P.2d 710 ("The issue is not whether there is evidence to support an alternative result, but, rather, whether the trial court's result is supported by substantial evidence."). In light of these failings, Employer's arguments are ineffectual in overturning the WCJ's findings of fact. Because of this, Employer is bound by these findings. *See Martinez*, 1993-NMCA-020, ¶ 18; *see also* Rule 12-318(A)(3), (4).

**{9}**     Second, Employer's challenge to the WCJ's application of various doctrines in reaching the conclusion that Worker's accident arose out of and in the course of his employment likewise is deficient. As just one example,[3] in regard to its argument that the WCJ erroneously applied the premises exception, Employer contends Worker was not permitted "to be on the operational mine site powering on or off the small generator." Employer advanced a similar contention in its closing argument to the WCJ, and its proposed findings of fact 60 and 73 are consistent with this argument. The problem for Employer is that the WCJ rejected these arguments and findings. *See Perez v. Int'l Mins. & Chem. Corp.*, 1981-NMCA-022, ¶ 16, 95 N.M. 628, 624 P.2d 1025 ("A workman or employer must convince the trial court, not this Court, that the evidence presented supports the righteousness of the claim or defense."); *cf. In re Yalkut*, 2008-NMSC-009, ¶ 18, 143 N.M. 387, 176 P.3d 1119 ("[F]ailure to make a finding of fact is regarded as a

---

[3]As noted, the WCJ invoked several doctrines in concluding Worker's accident was compensable under the Act. Employer's failure to convince us of error in each doctrine's application results in affirmance. *Cf. Reymond v. Holt*, 1913-NMSC-085, 33 N.M. 1, 141 P. 156 (providing that, to secure a reversal, the appellant must show that all grounds upon which a decision rests are not well taken). We therefore only address one such doctrine in any depth.

finding against the party seeking to establish the affirmative."). What is more, the WCJ made findings to the contrary, including that "*Worker was lawfully present at the mine*" and "when . . . Worker was killed he was in the process of performing a duty outside of normal work hours *that he was allowed to do* and that was in furtherance of . . . Employer's interest." (Emphases added.) Critically, Employer does not explain how the WCJ's *actual* findings of fact—by which, as discussed, Employer is bound—are inadequate to support the WCJ's conclusion of law that the premises exception applies. And it is not our role to develop this argument for Employer. *See, e.g.*, *Romero v. Laidlaw Transit Servs., Inc.*, 2015-NMCA-107, ¶ 16, 357 P.3d 463 (declining to review unsupported and undeveloped arguments); *see also, e.g.*, *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶¶ 70-71, 309 P.3d 53 (declining to review an inadequately briefed issue, where to do so would necessitate doing the appellant's work). In the absence of such a developed argument, the WCJ's determinations that Worker's accident arose out of and was in the scope of employment stand.

## II.     The WCJ's Determinations That Worker Did Not Willfully Cause His Death and That Worker's Drug Use Did Not Bar Recovery

**{10}**     Employer next contends the WCJ's finding that Worker did not willfully cause his death is unsupported by substantial evidence and the WCJ's conclusion that Worker's use of methamphetamines did not bar recovery is erroneous. *See* § 52-1-11 ("No compensation shall become due or payable from any employer under the terms of the . . . Act in the event such injury was willfully suffered by the worker or intentionally inflicted by the worker."); § 52-1-12.1 (stating the circumstances under which intoxication reduces compensation).[4] Both of Employer's contentions fail.

**{11}**     First, Employer claims that Worker's being under the influence of methamphetamines at the time of the accident bars recovery in this case. This argument is foreclosed by Section 52-1-12.1(J), which precludes the reduction or denial of death benefits to qualifying dependents due to the worker's intoxication. Employer argues Section 52-1-12.1(J) does not apply because Jacob is not a qualifying dependent under the Act. As we discuss below, however, Employer's arguments that Jacob is not a qualifying dependent fail; accordingly, Employer's argument pertaining to intoxication likewise fails.

**{12}**     Second, Employer's sufficiency challenge to the WCJ's finding that Worker did not willfully cause his own death is marked by the same failings discussed above. Of note, Employer, citing evidence favorable to it, contends such evidence "constitutes

---

4Notwithstanding that the WCJ cited the current (and applicable) versions of these statutes in its compensation order, Employer, in its brief in chief, cites, quotes, and relies on case precedent construing the previous version of Section 52-1-11 that barred compensation for injuries "occasioned by the intoxication of [the] worker." Section 52-1-11 (1989). This version was not in effect at the time of Worker's death and is not applicable to this case. *See Jojola v. Aetna Life & Cas.*, 1989-NMCA-085, ¶ 6, 109 N.M. 142, 782 P.2d 395 ("[I]n workers' compensation cases the uniform rule in this state has been that a claim for benefits is governed by the law in effect at the time the cause of action accrued."). We remind counsel of their duty to disclose controlling legal authority, even if contrary to their client's position. *See* Rule 16-303(A)(2) NMRA.

substantial evidence of Worker's willfulness in the suffering of the injury that was the sole cause of his death." As discussed, such an argument plainly does not comply with the requirements for making a sufficiency challenge, but instead is an invitation to reweigh the evidence and substitute our judgment for that of the WCJ. *See* Rule 12-318(A)(3), (4); *Martinez*, 1993-NMCA-020, ¶¶ 8-18; *Gutierrez*, 1988-NMCA-006, ¶ 7. This we will not do. *See, e.g.*, *Begay v. Consumer Direct Pers. Care*, 2015-NMCA-025, ¶ 6, 344 P.3d 1083. Suffice it to say that here, too, Employer fails to properly challenge the finding of fact. The WCJ's determination that Worker did not willfully cause his death stands.

### III. The WCJ's Determination That Jacob Is a Dependent, Entitled to Death Benefits

**{13}** The WCJ concluded that Jacob "is a dependent of [Worker], as that term is defined in Section 52-1-17(A) of the . . . Act, in that Jacob . . . is unmarried and incapable of self-support." *See* § 52-1-17(A) (deeming, in relevant part, a child over eighteen years of age "incapable of self-support and unmarried" a dependent entitled to death benefits under Section 52-1-46). Employer alleges the WCJ erred in determining that Jacob qualifies as a dependent under Section 52-1-17(A). Employer offers two principal grounds for reversal here, neither of which we conclude is with merit.[5]

### A. Actual Dependency

**{14}** Initially, Employer claims that Jacob, who at the time of Worker's death was not a minor, "must have been actually dependent upon Worker" "to receive death benefits as a dependent under Section 52-1-17(A)." The WCJ held to the contrary—that actual dependency is not required under Section 52-1-17(A). The statute supports the WCJ's conclusion.

**{15}** The plain language of Section 52-1-17(A) provides that a child over eighteen is a dependent if "incapable of self-support and unmarried." *See id.*; *see also Fowler v. Vista Care*, 2014-NMSC-019, ¶ 23, 329 P.3d 630 (looking to the plain language of the Act to discern legislative intent). In contrast to other subsections, Subsection A of Section 52-1-17 does not refer to "actual dependency." *Compare* § 52-1-17(A) (making no reference to actual dependency), *with* § 52-1-17(C) (deeming "a parent or grandparent" a dependent "*only if actually dependent* . . . upon the deceased" (emphasis added)). *See also Garrison v. Safeway Stores*, 1984-NMCA-116, ¶¶ 9-10, 102 N.M. 179, 692 P.2d 1328 (examining statutory history of Section 52-1-17 and providing that substantially similar, prior version of Section 52-1-17(A) "did not require actual dependency for children"). We will not read an actual-dependency condition into Section

---

5Employer raises a third claim of error here that is without merit. Employer argues that Jacob does not qualify as a dependent under the "in-school" provision of Section 52-1-17(A). *See id.* (providing that a child who is "under twenty-three years of age if enrolled as full-time student in any accredited educational institution" qualifies as a dependent). The WCJ, however, did not rely on the "in-school" provision. This purported error simply does not exist.

52-1-17(A).[6] *See Garcia v. Borden, Inc.*, 1993-NMCA-047, ¶ 7, 115 N.M. 486, 853 P.2d 737 ("A court will not read into a statute language that is not contained therein, particularly if the statute makes sense as written."). The WCJ's conclusion that actual dependency is not required under Section 52-1-17(A) is affirmed.

## B.      Incapable of Self-Support

**{16}**     Employer next claims that Jacob does not qualify as a dependent because he "is not incapable of self-support" under Section 52-1-17(A). Yet the WCJ found the opposite—that "Jacob is incapable of self-support." And Employer again fails to challenge this finding in the manner dictated by our rules and case law. *See* Rule 12-318(A)(3), (4); *Martinez*, 1993-NMCA-020, ¶¶ 8-18; *Gutierrez*, 1988-NMCA-006, ¶ 7. Instead, again, Employer cites evidence favorable to its position on appeal, ignoring contrary evidence. As just one example, Employer cites Jacob's pediatric physician's opinion that Jacob, with appropriate support, would be able to hold down a job. Employer omits the physician's additional opinion—in the very next paragraph of the record—that "to a reasonable degree of medical probability, Jacob . . . is currently incapable of self-support and I do not foresee a time in the reasonably foreseeable future that Jacob will be capable of self-support." Employer ignores this and other evidence supporting the WCJ's ultimate finding that Jacob is incapable of self-support and, instead, asks us to draw a conclusion contrary to the WCJ's. Again, we will not. *See Begay*, 2015-NMCA-025, ¶ 6. The WCJ's findings are therefore binding on Employer. *See Martinez*, 1993-NMCA-020, ¶ 18. The WCJ's determination that Jacob is a qualifying dependent stands.

## IV.      The WCJ's Award of Attorney Fees During the Pendency of Appeal

**{17}**     Lastly, Employer argues the WCJ was without jurisdiction to rule on Worker's motion for attorney fees while this case was pending on appeal. This argument is without merit. *See Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 39, 113 N.M. 231, 824 P.2d 1033 (providing that "in collateral matters not involved in the appeal, *such as determining the propriety and amount of attorney's fees*, the trial court retains jurisdiction" (emphasis added)).

## CONCLUSION

**{18}**     For the foregoing reasons, we affirm.

**{19}   IT IS SO ORDERED.**

---

6In support of its claim that actual dependency was a prerequisite to the award, Employer relies on case law construing a prior version of Section 52-1-17(A) that included the "actual dependency" provision. *See, e.g.*, *Hamilton v. Prestridge*, 1943-NMSC-051, ¶ 5, 47 N.M. 440, 144 P.2d 156 (construing a prior version of Section 52-1-17(A)). That provision, however, has long since been removed. *Compare id.* ¶ 3 ("'A child . . . incapable of self support and unmarried, *actually dependent upon the deceased.*'" (emphasis added) (quoting NMSA 1941, § 57-912(j)(1) (1937)), *with* § 52-1-17(A) ("[A] child . . . incapable of self-support and unmarried."). The case law cited by Employer accordingly does not control.

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**